ATTORNEY FOR APPELLANT
Jan B. Berg
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Stephen Tesmer
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0506-CR-290

LESLIE MASK,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, Nos. 49G04-0301-FD-011936:
49G04-0301-FC-013162
The Honorable Patricia Gifford, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0312-CR-1059

**June 23, 2005**

**Shepard, Chief Justice.**

Appellant Leslie Mask appeals convictions that stem from two separate incidents of battery in 2002. Besides contending that his sentences were improperly enhanced under Blakely v. Washington, Mask poses a statutory question of first impression. When a court orders both executed time and suspended time for actions occurring in a single episode of criminal conduct, do the sentencing restraint provisions of Indiana Code § 35-50-2-1(c) cover only the executed

time or do they apply to the entire sentence?  We hold that suspended time must be included in calculating "terms of imprisonment" permissible under § 35-50-2-1.

## Facts and Procedural History

On November 20, 2002, Mask and his wife Angela Dunigan were involved in an argument that resulted in Mask pushing Dunigan and then striking her in the face.

About a month later, on December 20th, another argument erupted between the two.  This time, Mask pointed a handgun at himself, and then at Dunigan.  He threatened her with the gun, and then pushed her to the ground and hit and kicked her.  Shortly after this incident, Dunigan and her children moved into a domestic violence shelter.  While at the shelter, Dunigan contacted police, who began an investigation of Mask.

The State initially charged Mask with battery and domestic battery, both as class A misdemeanors, for the November incident.  For the December incident, it charged Mask with battery using a deadly weapon as a class C felony; criminal recklessness using a deadly weapon as a class D felony; pointing a firearm as a class D felony; intimidation as a class D felony; and battery and domestic battery as class A misdemeanors.  The State also sought to enhance both the November and December battery and domestic battery misdemeanor charges to felonies based on Mask's prior conviction for battering Dunigan in 2001.[1]

The court conducted a single jury trial for both sets of charges, and the jury found Mask guilty on all counts except for the battery with a deadly weapon (on which the jury found him guilty only of misdemeanor battery).  Mask then pled guilty to the enhancement, which raised the battery and domestic battery charges to class D felonies.

---

[1] This conviction stems from a 2001 incident. (Exhibits at 6-9.)  Although Mask pled guilty to that charge, at the trial for the current charges, he insisted that he had never actually hit Dunigan, but was guilty only of "leaving marks on her arms" and had only grabbed "her arms because she had swung at me and I tried to grab her to calm her down" and had pled guilty only "to keep from dragging it through court with her sickness and everything else."  (Tr. at 97-98.)

2

During the sentencing proceeding, the trial court merged several of the convictions. For the November incident, it entered judgment only for battery as a class D felony. For the December incident, it entered judgment for one count of battery, the count of intimidation, and the criminal recklessness charge, all as class D felonies.

The court enhanced each of the sentences to the maximum three-year term permitted for a class D felony. Ind. Code. Ann. § 35-50-2-7 (West 2004). The court ordered the three sentences for the December incident to be served consecutively, saying that each of these acts of violence were "separate incidences although they occurred at the same time," but suspended the terms for the criminal recklessness and intimidation convictions.[2] It then ordered the sentence for the November incident to be served consecutively to those. Mask thus received a nine-year sentence for the December incident, and a three-year term for the November incident. Only six years of the total sentence were actually executed.

On appeal, Mask claimed that the trial court had erred in admitting certain evidence and that the court had erred in imposing four consecutive sentences. The Court of Appeals held that the trial court had properly admitted evidence of Mask's prior battery of Dunigan, but concluded that the total length of the consecutive sentences for the three convictions related to the December incident exceeded the penalty permitted by Ind. Code § 35-50-1-2(c). Mask v. State, No. 49A02-0312-CR-1059 (Ind. Ct. App. Oct. 6, 2004) vacated.

Mask sought transfer, arguing that the sentences were improperly enhanced under Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004). We grant transfer to address the propriety of the consecutive sentences and the alleged Blakely violation. We summarily affirm the Court of Appeals' rejection of Mask's contention about the bad acts evidence. Ind. Appellate Rule 58(A).

---

[2] While these three convictions did, of course, reflect three discrete acts of violence against Dunigan, there is little question that they were part of an "episode of criminal conduct", which the code defines as "offenses or a connected series of offenses that are closely related in time, place and circumstances." Ind. Code Ann. § 35-50-1-2(b) (West 2004).

**I.  Consecutive Sentences for December Incident Are Improper**

Mask's contention about his consecutive sentences rests on Ind. Code Ann. § 35-50-1-2(c) (West 2004), which prohibits the combined term of consecutive sentences arising out of an episode of criminal conduct from exceeding the presumptive term of the class of felonies one grade higher than that for the most serious felony of which the defendant is convicted. Specifically, Mask argues that although he received only three years of executed time for the class D felonies in the December incident, the total time he received for that criminal episode (nine years) exceeds the four years that is the presumptive for a class C felony.  The Court of Appeals agreed, and so do we.

Consecutive sentences cannot be imposed in the absence of express statutory authority. Baromich v. State, 252 Ind. 412, 416, 249 N.E.2d 30, 33 (1969).  The statute that provides such authority is Ind. Code § 35-50-1-2.  Subsection (c) of that statute provides in relevant part that:

> Except as provide in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively . . . .  However, except for crimes of violence, the total of the consecutive terms of imprisonment, . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code Ann. § 35-50-1-2(c) (West 2004).  Mask's argument hinges on the meaning of the phrase "terms of imprisonment." If the two, three-year suspended sentences for the December incident are not "terms of imprisonment," then Mask's executed time would be less than the four year presumptive term for a class C felony. Ind. Code Ann. § 35-50-2-6 (West 2004).

In State v. Price, we stated that for purposes of § 35-50-1-2(d), "[a] 'term of imprisonment' is a penalty under which the convict is sent to incarceration for some period . . . and then released after the period has passed." 715 N.E.2d 331, 332 (Ind. 1999).  Incarceration in the context of subsection (c) does not mean the period of executed time alone.  A suspended sentence differs from an executed sentence only in that the period of incarceration is delayed unless, and until, a court orders the time served in prison. See Beck v. State, 790 N.E.2d 520, 523

(Ind. Ct. App. 2003) (Mattingly-May, J., concurring in result).  In other words, the imposition of a suspended sentence leaves open the real possibility that an individual will be "sent to incarceration for some period" before being released from any penal obligation.  This commonly occurs when probation or parole is revoked, and a defendant who received probation or parole is subject to incarceration until released.

We hold that any period of a suspended sentence must be included when calculating the maximum aggregate sentence under Indiana Code § 35-50-1-2(c).  In adopting this holding, we are influenced by the rule of lenity, which requires that "criminal statutes be strictly construed against the state."  Ellis v. State, 736 N.E.2d 731, 737 (Ind. 2000) (quoting Walker v. State, 668 N.E.2d 243, 246 (Ind. 1996)).  In this case, the phrase "terms of imprisonment" is left undefined by the General Assembly in § 35-50-1-2 and we believe that the phrase should be read in order to include any period of incarceration a defendant is sentenced to, even if all or a portion of that period of time is suspended.

Thus, in this case the imposition of three, three-year consecutive sentences for the December incident was improper as exceeding the prescribed maximum.

### II.    Propriety of the Aggravating Circumstances

Mask argues that his sentences were improperly enhanced because the aggravating circumstances were not found by a jury beyond a reasonable doubt as mandated by Blakely v. Washington.  We agree with Mask in part.

In Smylie v. State, we held that Blakely was applicable to Indiana's sentencing scheme, and thus required that "the sort of facts envisioned by Blakely as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." 823 N.E.2d  679, 686 (Ind. 2005).  Contrary to Mask's argument, Blakely does not require that a jury find all the facts used to enhance a sentence beyond the statutory maximum.  Blakely and the later case United States v. Booker indicate that there are at least four ways that meet the procedural requirements of the

5

Sixth Amendment in which such facts can be found and used by a court in enhancing a sentence. As we noted recently in Trusley v. State, an aggravating circumstance is proper for Blakely purposes when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted to by a defendant; or 4) stipulated to by the defendant, or found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his Apprendi rights. Trusley v. State, __ N.E.2d__, 2005 WL 1415414, at *2 (Ind. June 17, 2005); See also Blakely, 542 U.S. __, 124 S.Ct. 2531, 2537, 2541 (2004); United States v. Booker, 543 U.S. __, 125 S.Ct. 738, 756 (2005).

At the sentencing hearing in this case, the judge enhanced Mask's sentences because "there are aggravating circumstances by reason of the fact that there have been multiple instances of battery and over a long period of time and the fact that this did occur in fact when children were present . . . ." (Tr. at 174.) As we have previously noted, the precise language of an aggravator need not be submitted to a jury nor admitted to by a defendant in order to pass the Sixth Amendment requirements established in Blakely. Morgan v. State, __ N.E.2d __, 2005 WL 1403925, at *4-5 (Ind. June 15, 2005). In some instances, an aggravator may be permissible if it reflects an attempt to articulate or summarize the weight or importance of facts otherwise permissibly found. Id.

The first of the aggravators here, that Mask had battered his wife on several occasions over a period of time, certainly complies with Blakely's requirements. Mask had pled guilty in 2001 to the battery of his wife, clearly a fact of prior conviction. Moreover, the jury found Mask guilty of the two instances of battery in 2002 that were separated by a month and that are the subject of the instant appeal. This indicates that the judge's statement concerning the number of batteries and the protracted period of time over which they occurred was based on facts found by permissible methods. It summarizes the weight of the prior convictions and was appropriately used by the trial court.

The other aggravating circumstance, that the battery had occurred in front of a child, was not found by one of the permissible methods. The question of whether or not a child was present at the time of the December 20th battery was never submitted to a jury, nor included in the

6

charging information. Mask never admitted that a child was present and, in fact, stated at trial that the child was lying about having witnessed any battery. (Tr. at 111.) Consequently, this aggravator was impermissible for purposes of enhancing the sentence of any of the counts.

As we said in Smylie, though, such a fact does not need to be found by one of the permissible methods if it is used to run sentences consecutively. Smylie, 823 N.E.2d at 686. Thus, this fact could be used to run the December and November sentences consecutively.

## Disposition

Of the two aggravating factors used by the trial court, only one was valid under Blakely. Although the permissible aggravator, that repeated incidents of battery occurred, is serious, we do not believe that on its own it could serve to enhance all of the convictions to the three-year limit for class D felonies.

We remand to the trial court with instructions to afford the State an election to prove the additional aggravating circumstance to a jury. Should the State forgo this election, the trial court should reconsider the appropriate sentence based on the existing permissible aggravating circumstance. The penalty for the December incident cannot exceed the standard term for a class C felony, four years. Running the November sentence consecutive to the December sentence is permissible.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**