**Desmond DAVIDSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0904–CR–287.**

Court of Appeals of Indiana.

Nov. 30, 2009.

Transfer Granted Jan. 21, 2010.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Desmond Davidson appeals his 545–day sentence following his conviction for Auto Theft, as a Class D felony. He presents the following issues for our review:

1. Whether the trial court abused its discretion when it sentenced him.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On August 5, 2008, Davidson stole an SUV while it was parked at a gas station in Indianapolis. Approximately twenty minutes later, a police officer saw the vehicle and followed it until it pulled into a driveway. Davidson jumped out of the driver's side of the vehicle, and a minor jumped out of the passenger's side. They both ran from the officer. After Davidson ran into some woods and the officer requested the assistance of a search dog, Davidson came out of the woods and surrendered.

The State charged Davidson with Class D felony auto theft and Class A misdemeanor resisting law enforcement. After a bench trial on January 9, 2009, Davidson was found guilty as charged. At the sentencing hearing on February 27, 2009, the

trial court stated, "I'll show that the mitigating factors outweigh the aggravating circumstances." Tr. p. 90. It then proceeded to impose a sentence for the auto theft conviction of 545 days, with 180 days executed and 365 days suspended to probation. Davidson now appeals his sentence for auto theft.[1]

## DISCUSSION AND DECISION

■ We engage in a multi-step process when evaluating a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.* Even if a trial court abuses its discretion by not issuing a reasonably detailed sentencing statement or in its findings or non-findings of aggravators and mitigators, we may choose to review the appropriateness of a sentence under Rule 7(B) instead of remanding to the trial court. *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind.2007).

Initially, we address the threshold question presented by Davidson on appeal, namely, whether we ought to consider the suspended portion of his sentence as qualitatively different from the executed portion of his sentence for purposes of deter-mining whether the trial court abused its discretion in sentencing him and whether his sentence is inappropriate. Members of this court have been unable to reach unanimous agreement on this issue. Judge May was the first to state her belief that "A year is still a year, and a sentence is still a sentence," and that suspended sentences ought to be treated no differently from executed sentences for purposes of appellate review. *Beck v. State*, 790 N.E.2d 520, 523 (Ind.Ct.App.2003) (Mattingly-May, J., concurring in result). The majority in *Beck*, however, stated its belief that a sentence is not a "maximum" sentence, even if it equals the maximum time allowed by statute for a particular crime, if part of that time is suspended. *Beck*, 790 N.E.2d at 522. Judge May's position later was adopted by panels of this court in *Cox v. State*, 792 N.E.2d 898, 904 n. 6 (Ind.Ct.App.2003), *trans. denied*, and *Pagan v. State*, 809 N.E.2d 915, 926 n. 9 (Ind.Ct.App.2004), *trans. denied*.

In *Eaton v. State*, 825 N.E.2d 1287 (Ind.Ct.App.2005), the majority followed *Cox* and Judge May's point of view. Judge Kirsch dissented, stating, "a suspended sentence is not the same as an executed sentence, and time spent on work release through a community corrections program is not the same as time spent in a state prison." *Eaton*, 825 N.E.2d at 1291 (Kirsch, C.J., dissenting).[2]

■ Most recently, a panel of this court adopted Judge Kirsch's view and held, "for purposes of Rule 7(B) review, a maximum sentence is not just a sentence of maximum length, but a *fully executed* sentence of maximum length." *Jenkins v. State*, 909 N.E.2d 1080, 1085–86 (Ind.Ct.App.

---

1. Davidson does not challenge his concurrent 365–day sentence for resisting law enforcement.

2. Our supreme court later disagreed with a portion of *Eaton*, but did not address the suspended versus executed time conundrum. *See Childress v. State*, 848 N.E.2d 1073, 1077 n. 2 (Ind.2006).

2009), *trans. pending.* Among other things, the *Jenkins* court stated, "Common sense dictates that less executed time means less punishment. That is why almost any defendant, given the choice, would gladly accept a partially suspended sentence over a fully executed one of equal length." *Id.* at 1084. In addition, "[t]he 'real possibility' that the suspended portion of a sentence will be ordered executed is not random or dependent on the whim of a judge; a defendant can ensure that it will never become reality simply by abiding by the terms of his probation." *Id.* at 1084–85.

We agree with the rationale in *Beck* and *Jenkins* and hold that, in the appellate review of sentencing decisions, we will "not simply [look] at the number of years of the sentence[,]" but will "look at the total sentence actually imposed (including whether some or all of a sentence was suspended or suspended to probation)[.]"[3] *See Eaton,* 825 N.E.2d at 1291 (Kirsch, C.J., dissenting). Accordingly, we reject Davidson's invitation to review his partially-suspended advisory sentence the same as if it were a fully-executed advisory sentence.

### Issue One: Abuse of Discretion

Davidson contends that the trial court abused its discretion when it expressly stated that the mitigating circumstances outweighed the aggravating circumstances, but nonetheless imposed the advisory sentence for a Class D felony of 545 days (or one and a half years). Relying primarily upon cases pre-dating Indiana's switch from "presumptive" to "advisory" sentencing in 2005, Davidson contends that the trial court's statement requires either that we reduce his sentence, or remand to the trial court for resentencing. *See Laughner v. State,* 769

N.E.2d 1147, 1162 (Ind.Ct.App.2002) (remanding for resentencing where the trial court found mitigating circumstances, there were no proper aggravating circumstances, and presumptive sentence was imposed), *trans. denied, abrogated on other grounds by Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007).

We conclude Davidson's position comes too dangerously close to reinstating a de facto presumptive sentencing regime. The General Assembly deliberately rejected such a regime when it enacted the 2005 amendments that were designed to rectify the Sixth Amendment problem with presumptive sentencing that *Blakely v. Washington* presented. *See Anglemyer,* 868 N.E.2d at 490. Under the current advisory sentencing regime, trial courts have no obligation to "weigh" aggravating and mitigating circumstances. *Id.* at 491. If we were to hold that a trial court's statement that the mitigators outweighed any aggravators *required* imposition of less than an advisory sentence, that would effectively reinstate the advisory sentence as a presumptive sentence. This also would be contrary to Indiana Code Section 35–38–1–7.1(d), which permits the imposition of any sentence that does not exceed statutory or constitutional limits, "regardless of the presence or absence of aggravating circumstances or mitigating circumstances."

Additionally, we cannot review, for an abuse of discretion, "[t]he relative weight or value assignable to reasons properly found or those which should have been found. . . ." *Id.* To say that the trial court here abused its discretion in not imposing less than the advisory would be equivalent to saying that it abused its discretion in its weighing of the aggravating

---

**3.** The author of this opinion notes that he has reconsidered this issue since he concurred with the majority opinion in *Eaton.*

and mitigating circumstances. Our abuse of discretion review is strictly limited to whether the trial court entered a reasonably detailed sentencing statement, and whether it relied upon only proper aggravating circumstances and/or noted all significant mitigating circumstances. *See id.* at 490–91. Moreover, the trial court's suspension of one year of Davidson's sentence reflects the court's determination that the mitigating circumstances outweighed the aggravating circumstances. The trial court did not abuse its discretion when it imposed the advisory sentence.

### Issue Two: Appellate Rule 7(B)

 We now turn to the separate question of whether Davidson's 545-day sentence is inappropriate in light of his character and the nature of the offense. When considering whether a sentence is inappropriate under Indiana Appellate Rule 7(B), we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct.App.2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

Regarding the nature of the offense, we concede there is very little to separate Davidson's crime from a "run of the mill" auto theft. There was no damage to property or bodily injury to any person. The vehicle was recovered shortly after Davidson stole it. He did not lead police on a high-speed chase, and his fleeing on foot after pulling· over resulted in a separate resisting law enforcement conviction and sentence. The State contends the crime was more severe than an "average" auto theft because there apparently was a mi-

nor passenger in the stolen vehicle with Davidson who also fled after the vehicle was pulled over. Very little is known about this passenger, however, including his age. Davidson himself was nineteen when he committed this offense, and there would be a considerable difference between involving a twelve-year-old in this crime and a seventeen-year-old. We do not find anything egregious regarding the nature of the offense.

With respect to Davidson's character, his criminal history consists of a juvenile delinquency adjudication when he was fourteen for what would have been Class A misdemeanor intimidation if committed by an adult after he threatened to kill a teacher. He has no other delinquency adjudications, convictions, or violations of probation. Prior to committing the current offenses, Davidson had been arrested at different times for Class A misdemeanor battery and two counts of Class B misdemeanor disorderly conduct. After conviction in the current case but before sentencing, Davidson was arrested for Class B felony burglary.

Davidson's arrests do not constitute a "criminal history" and do not establish the historical fact that he committed the offenses for which he was arrested. *See Cotto v. State,* 829 N.E.2d 520, 526 (Ind. 2005). That said, the arrests that occurred before Davidson was tried reflect negatively upon his character by revealing that he was not deterred from committing the present offense even after having been subject to the police authority of the State. *See id.* Davidson's post-conviction burglary arrest, however, does not establish that he committed that offense, nor is it relevant in determining whether Davidson should have been dissuaded from committing the auto theft for which he had already been convicted. Still, even though Davidson's criminal history is not exten-

sive and his record of arrests is not overly lengthy, this evidence reveals that his character is less than sterling.

Davidson also directs us to his mother's testimony at the sentencing hearing that he was nearing completion of his GED and would become a father in about two months as "positive" character evidence. Regarding his impending fatherhood, there is no direct evidence in the record regarding whether Davidson's paternity of the child is established, or even who the purported mother is.[4] There is no obligation to give mitigating consideration in sentencing to the fact that a defendant has a dependent, absent special circumstances or evidence that hardship to the dependent would be "undue." *See Benefield v. State*, 904 N.E.2d 239, 247 (Ind.Ct.App.2009), *trans. denied.* Davidson has not met that burden. He also fails to adequately explain why we should give special consideration to his near-completion of his GED. *See id.* at 248.

In sum, we conclude that this case concerns a roughly "average" crime and a roughly "average" defendant. As such, we cannot say that Davidson's advisory sentence is inappropriate. We also note the State argues that Davidson's sentence was too lenient, apparently relying upon its ability to seek an increase in sentences under Appellate Rule 7(B) when a defendant first challenges his or her sentence. *See McCullough v. State*, 900 N.E.2d 745, 750–51 (Ind.2009). As noted by Justice Boehm in his separate concurrence in *McCullough*, joined by Justice Rucker, no

Indiana appellate court has ever increased a sentence, and he convincingly states that the power to increase a sentence likely should not be exercised in the future "except in the most unusual case." *Id.* at 753 (Boehm, J., concurring). This is not a "most unusual case." We decline to order an increase in Davidson's sentence, or to order that his sentence be fully executed rather than partially suspended.

Affirmed.

KIRSCH, J., concurs.

BARNES, J., concurs in result with separate opinion.

BARNES, Judge, concurring in result.

I write to concur in result, noting that I am in full accord with all parts of the majority opinion, except where it agrees with another panel of this court's opinion in *Jenkins.* I believe that the interpretation Judge May first gave in her concurrence in *Beck*, i.e. that "A year is still a year, and a sentence is still a sentence," is the most legally sound manner in which to assess a sentence.

The *Jenkins* opinion and Judge Kirsch's dissent in *Eaton* certainly make valid points regarding the substantial difference between suspended and executed sentences. A suspended sentence, at least initially, offers a defendant the chance to sleep in his or her own bed and go about his or her life with a greater degree of normalcy.[5] Still, I cannot ignore the fact that thousands of criminal defendants have

---

4. The presentence report indicates that Davidson has a girlfriend, but that they had been together only since the beginning of February 2009, or just a few weeks before the sentencing hearing.

5. I am speaking here of a sentence suspended to probation where the defendant is free to return to his or her residence without restriction. Community corrections and similar

programs, such as home detention and work release, are "a hybrid between conditions of probation for a suspended sentence and executed sentence punishments." *See Tubbs v. State*, 888 N.E.2d 814, 816 (Ind.Ct.App.2008). Community corrections and home detention have been described as "material punitive obligations." *Id.*

their probation revoked, and that in many of these cases, the entire suspended portion of their sentence is imposed. Trial courts have vast discretion in deciding whether to revoke a defendant's probation for violation of any single term of probation, including for relatively minor violations that do not involve the commission of a new offense. *See, e.g., Podlusky v. State,* 839 N.E.2d 198 (Ind.Ct.App.2005) (affirming revocation of probation and imposition of previously-suspended two-year sentence, where notice of probation violation was filed five days after defendant left treatment facility and failed to inform probation department that she had moved back to her apartment, the address for which the probation department had). Trial courts are not required to impose draconian punishments for minor probation violations, but they are entitled to do so. Given our highly deferential abuse of discretion standard of review, such revocations are likely to withstand appellate scrutiny. A defendant generally is stuck—period. So be it.

Most importantly, however, direct appeal after sentencing is a defendant's one and only opportunity to challenge his or her sentence under Appellate Rule 7(B). Simply put, "a defendant cannot collaterally attack a sentence on appeal from a probation revocation." *Stephens v. State,* 818 N.E.2d 936, 939 (Ind.2004). The original length of a sentence cannot be challenged under Rule 7(B) after a defendant's probation is revoked and a previously-suspended sentenced is ordered to be executed. *See Jones v. State,* 885 N.E.2d 1286, 1290 (Ind.2008). Sanctions after probation revocation are reviewed only for an abuse of discretion. *Id.* Thus, under *Jenkins,* a defendant who receives a suspended sentence and who challenged that sentence on direct appeal but later has his or her probation revoked is in a worse position than a defendant who initially received an executed sentence with no suspension, but who was able to fully challenge the appropriateness of that sentence on direct appeal. Additionally, under the *Jenkins* approach a defendant might choose to completely forgo his or her right to an appellate challenge of a sentence if it is largely or entirely a suspended sentence.

I also believe that *Jenkins* and the majority opinion are inconsistent with *Mask v. State,* 829 N.E.2d 932 (Ind.2005). It is true, as is noted in *Jenkins,* that *Mask* decided an issue different than the one before us. Namely, *Mask* addressed whether any suspended portion of a sentence must be considered a period of "incarceration" or "imprisonment" for purposes of Indiana Code Section 35–50–1–2(c), which limits the total "period of imprisonment" that may be imposed for multiple non-violent offenses arising from an episode of criminal conduct. The *Mask* opinion states,

> Incarceration in the context of subsection (c) does not mean the period of executed time alone. A suspended sentence differs from an executed sentence only in that the period of incarceration is delayed unless, and until, a court orders the time served in prison. *See Beck v. State,* 790 N.E.2d 520, 523 (Ind.Ct.App. 2003) (Mattingly–May, J., concurring in result). In other words, the imposition of a suspended sentence leaves open the real possibility that an individual will be "sent to incarceration for some period" before being released from any penal obligation. This commonly occurs when probation or parole is revoked, and a defendant who received probation or parole is subject to incarceration until released.

*Mask,* 829 N.E.2d at 936. Although *Mask* is not directly on point here, it is telling that our supreme court saw fit to cite

Judge May's separate concurrence in *Beck* with approval and as support for the general proposition that for legal purposes, suspended sentences should be treated no differently than executed sentences.

I do not have any sympathy for convicted defendants who violate reasonable terms of probation. However, it seems to me that we best discharge our constitutional sentencing review prerogative by considering a sentence in its entirety, and as if any suspended portion of that sentence would be imposed. For these reasons, I would not follow the reasoning of my colleagues in the majority and in *Jenkins*, and I believe that when reviewing a sentence on appeal, we should treat a fully or partially suspended sentence no differently than a fully executed sentence. In other words, I would review Davidson's 545–day sentence as a 545–day sentence, without regard for the fact that a majority of that sentence was suspended to probation. This is Davidson's one chance for full appellate review of the 545–day sentence, and I would provide it to him. That said, I do not believe the trial court abused its discretion in sentencing Davidson or that his sentence is inappropriate.